## Mary L. Rich v. George A. Bolton.

### Tenancy at Will, and from Year to Year. Notice to Quit.

The defendant, by the parol permission of the plaintiff, went into possession of certain promises as tenant to the plaintiff, without any agreement as to the time of holding or the payment of rent, and continued in possession about 14 years. He built a barn on the premises, and repaired the house. The plaintiff tried to settle with him; but could get nothing out of him but the repairs, and, it would seem, he refused to pay rent. *Held*, that after such refusal, he could not claim that by his continued occupancy, his estate had become enlarged by reason of an implied liability to pay reasonable annual rent.

*Held*, also, that said repairs, if made in compensation for the use, were not a payment of a yearly rent; but, rather, payments in gross, for the whole occupancy.

*Held*, also, that said tenancy did not ripen into a tenancy from year to year; because it lacked the essential element of *annual rent*, necessary to convert a tenancy at will into a tenancy from year to year.

A tenant at will is not entitled to six months' notice to quit; but only to reasonable notice, and such as determines the will of the landlord; and, when emblements are in question, such as will protect the tenant in his rights.

Rich v. Bolton.

THIS was an action to recover the possession of about three-fourths of an acre of land, with a house and barn thereon, brought before a justice of the peace, pursuant to § 22, ch. 46 of the Gen. Sts., and came to the county court by appeal. Plea, the general issue, and trial by the court, March term, 1872, Ross, J., presiding.

The writ was dated June 14, 1871. On the 27th of May, 1871, the plaintiff gave the defendant written notice to quit; but the notice stated no time for quitting. The plaintiff gave evidence tending to show that she had been in possession of said premises for twenty-five or thirty years, and that the defendant went into the possession thereof in April, 1857, with her consent, without any bargain as to the price of rent; that the first year the defendant build a small barn on the premises, for his own convenience, which he said cost him $100; that he put up a hog-pen, which the plaintiff did not want, and repaired the house considerably; that the plaintiff could get nothing of the defendant for rent, only what repairs he made; that she tried to settle with him two or three years before this suit was commenced, and was intending to allow for the improvements, on the rent, but could get nothing but the repairs; that there was no agreement that the improvements should apply on the rent; that the defendant did not claim he was to have the premises until the improvements were paid for in rent, but that the plaintiff expected the use of the place was enough to pay him; that the plaintiff paid most of the taxes, and one time paid them, and asked the defendant for some money, and he gave her two dollars; that the defendant moved from said premises in April, 1871, and fastened up the house. The plaintiff having no further testimony to introduce, the court decided the tenancy to be from year to year, and that the defendant was entitled to six months' notice to quit at the end of the year, and rendered a judgment of nonsuit. Exceptions by the plaintiff.

*Henry Heywood,* for the plaintiff.

In the case at bar the defendant was merely allowed to occupy the premises, and he is a tenant at will, and there are no circumstances to show an intention to create a tenancy from year to year. 4 Kent Com. 128, note e. (10th ed.); *Doe* v. *Wood,* 14 M. & W. 682; *Clayton* v. *Blakey,* 8 T. R. 3.

A tenant placed upon land as the defendant was, without any prescribed term or rent reserved, and as a mere occupier, is strictly a tenant at will. 4 Kent Com. 130 ; *Jackson* v. *Bradt*, 3 Caines,. 169 ; *Doe* v. *Baker*, 4 Dev. (N. C.) 220.

The leading circumstance that turns a tenancy at will into a tenancy from year to year, is the reservation or payment of an annual rent. 2 W. Bl. 1173 ; *Hanchett* v. *Whitney*, 2 Aik. 240 ; *Barlow* v. *Wainwright*, 22 Vt. 88 ; *Hall* v. *Wadsworth*, 28 Vt. 410 ; Taylor L. & Ten. § 3, pl. 61.

Thus, if a tenant hold over by consent, express or implied, after the determination of a lease for years, it is held evidence of a new contract without any definite period, and is construed to be a tenancy from year to year. *Layton* v. *Field*, 3 Salk. 222 ; *Jackson* v. *Salmon*, 4 Wend. 327 ; *Webber* v. *Shearman*, 3 Hill, 547.

There are here no circumstances upon which an implied contract for a tenancy from year to year can be raised, since length of occupation does not raise that implication, but the implied contract is raised by the fact that the tenant enters and holds under a stipulation to pay annual rent, and pays accordingly. *Sheldon* v. *Davey*, 42 Vt. 637 ; *Silsby* v. *Allen*, 43 Vt. 172.

On the question of notice, there is a conflict of decisions ; some cases holding that a tenant at will is entitled to reasonable notice to quit, and that such tenancy is determined *instanter*, by a demand of possession. Litt. §§ 68, 69 ; *Doe* v. *McKaeg*, 10 B. & C. 721 ; Co. Litt. 556, 556 a. ; *Ellis* v. *Paige*, 1 Pick. 43 ; Taylor L. & Ten. § 3, pl. 63 ; other cases holding no notice necessary ; *Jackson* v. *Bradt, supra ; Doe* v. *Baker, supra.*

*Ray & Drew*, for the defendant.

The long continued occupation of the premises, constituted a tenancy from year to year. There was no written lease. It was a tenancy at will to begin with, and all the authorities go to show that such a tenancy, continued for a year or two, becomes a tenancy from year to year. *Barlow* v. *Wainwright*, 22 Vt. 88 ; *Silsby* v. *Allen*, 43 Vt. 172 ; 4 Kent Com. 111, star paging.

The plaintiff's evidence showed a yearly tenancy, and the notice

to quit proved, was insufficient.   The defendant was entitled to six months' notice to quit, under the laws of this state.

The opinion of the court was delivered by

REDFIELD, J.   Did the occupancy of the premises by the defendant, create such a relation to the plaintiff, that he is entitled, before suit, to six months' notice to quit?   The defendant went into possession with the plaintiff's consent, but with no agreement as to paying rent.   He built a barn on the premises, and repaired the house.   The plaintiff testified that she tried to settle with him, but could get nothing of him but the repairs.   From this statement it would seem that he declined and refused to settle and pay rent.   After such refusal, he could not claim that, by his continued occupancy, his estate had become enlarged by reason of an implied liability to pay reasonable annual rent.   These repairs, if made in compensation for the use, were not a payment of a yearly rent, but rather payments in gross, for the whole occupancy.

In *Roe ex. d.* v. *Lees*, 2 W. Bl. 1173, Ch. J. DEGRAY said, that " leases for uncertain times, are, *prima facie*, leases at will ; it is the reservation of annual rent that turns them into leases from year to year."   In *Richardson* v. *Taugridge*, 4 Taunt. 128, it was held that the letting of a shed to be used as a stable, for the dung for compensation, created a tenancy at will, and not from year to year, because there was no reservation of rent referable to a year, or any aliquot part of a year.   In *Jackson ex. d.* v. *Bradt*, 2 Caines, 169, KENT, J., said : " The reservation of annual rent, is the leading circumstance that turns leases for uncertain terms into leases from year to year."   The same learned jurist stated the rule, in nearly the same language, in *Jackson ex. d.* v. *Rogers*, Caines' Cases in Error, 314, and in his commentaries, 4 Kent Com. 113.   In 1 Washb. Real Prop. 382, it is stated that " an agreement to pay rent, on the part of the tenant, is regarded as an essential element of a tenancy from year to year, and the time at which it is payable must have reference to a yearly holding, such as by the year, or some aliquot part of a year."   This element of annual rent will be found in each case

cited in behalf of the defendant. *Barlow* v. *Wainwright*, 22 Vt. 88; *Silsby* v. *Allen*, 43 Vt. 172. In *Doe d. Price* v. *Price*, 9 Bing. 356, the defendant had been let into possession without special agreement as to rent, and had been permitted to occupy and crop the land for fifteen years. The plaintiff required him to settle and pay what he owed him, or quit the premises. It was held, Ch. J. TINDAL giving the opinion, a tenancy at will, and that the notice determined the will. See cases cited in *Chamberlain* v. *Donehue*, 45 Vt. 50.

This case has none of the distinctive features of a tenancy from year to year, except the long acquiescence in the defendant's occupancy. We think, in directing a verdict for the defendant for the want of six months' notice to quit, there was error. There are several reported cases which maintain that a tenant at will even, is entitled to six months' notice to quit. *Parker* v. *Constable*, 3 Wils 25; *Jackson* v. *Bryan*, 1 Johns. 322; *Jackson* v. *Laughhead*, 2 Ib. 75; *Jackson* v. *Wheeler*, 6 Ib. 271; PUTNAM, J, upon *Ellis* v. *Page*, 1 Pick. 43, reported 2 Pick. 71, note. The learned judge, in the latter case, states the proposition, that the occupant for an indefinite time, with the consent of the owner, is entitled to six months' notice to quit, and cites many authorities. Of these cases, those from Keilw. 65; Brooke's Abr. 53; Viner's Abr. Est. B. 3; Com. Dig. Estates, x. 9; and *Layton* v. *Field*, 3 Salk. 222, were each determinations in regard to well-defined tenancies from year to year. Those from Keilw. 162; Year Books, 35 x. 6, 24, 1348; 14 & 16 x. 8, 13; and from 10 Vin. Abr. 406, were upon the question of the right of the tenant to the emblements. *Right* v. *Darby*, 1 T. R. 159; *Shore* v. *Porter*, 3 Ib. 13; *Regge* v. *Bell*, 5 Ib. 471; *Martin* v. *Watts*, 7 Ib. 83; *Timmins* v. *Rowlison*, 3 Burr. 1603; and *Rising* v. *Stannard*, 17 Mass. 282, will be found on examination to be, all of them, cases where *annual* rent was reserved. And most of the cases, as well as the case in which PUTNAM, J., gave the opinion, *supra*, arose under the Statute of Frauds, which declared certain parol leases to be, in effect, leases at will only. And the courts were called upon to determine whether the rights (notice to quit, among others,) which ten-

ants under the common law, had acquired by occupation and payment of rent, were taken away by the statute.

And what is said in most of these cases, in respect to tenancies at will, is with reference to tenancies declared to be such by the statute, but which had grown into tenancies from year to year, by occupation and paying rent. In these cases the courts felt constrained to protect tenants from violence and wrong, by allowing the equitable right of notice to quit, in cases, notwithstanding the statute, where, in favor of tenants, such right had become engrafted at common law.

The English rule seems to be well established, that in tenancies at will, which are so in fact, and not in name merely, as declared by the statute, six months' notice to quit is not required. *Right* v. *Beard*, 13 East, 210 ; *Knight* v. *Quigley*, 2 Camp. 505 ; *Hollingsworth* v. *Stennett*, 2 Esp. 717 ; 1 Washb. Real Prop. 349. But in all cases of this kind, there must be such notice as determines the will of the landlord, and a reasonable notice ; and where emblements are in question, such notice as shall protect the tenant in his rights. 1 Smith Lead. Cas. *76. No question of the right of the tenant.to emblements, arises in this case ; and, as the case is presented, the defendant seems to have had all the notice that he was entitled to. *Chamberlain* v. *Donehue*, *supra*.

The right of the tenant, occupying by the consent of the owner, to gather what he had sown, as implied by such consent, was thoroughly engrafted into the common law of England ; and when the Statute of Frauds declared certain parol leases, tenancies at will, the courts wisely maintained the common law right of the. tenant to reasonable notice, and where parol leases had become essentially tenancies from year to year, to six months' notice to quit. But this right was maintained by the courts, as a shield to the tenant, and not a sword wherewith to defy the just rights of the landlord to claim his own.

Judgment reversed, and cause remanded.