# Richard G. Prescott and Nancy S. Prescott v. Dirk K. Smits and Kay Smits

[505 A.2d 1211]

No. 84-184

Present: **Hill, Peck, Gibson and Hayes, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed December 13, 1985

Motion for Reargument Denied January 22, 1986

*Peter F. Langrock* and *James W. Swift* of *Langrock Sperry Parker & Wool*, Middlebury, for Plaintiffs-Appellees.

*Dinse, Erdmann & Clapp*, Burlington, for Defendants-Appellants.

**Hill, J.** This case asks us to determine the nature and duration of a tenancy created by entry under a lease agreement which is unenforceable under the Statute of Frauds. The superior court found that a year-to-year tenancy was created and adjudged the defendants liable for one year's rent less payments made. We affirm.

In early 1982, defendants-appellants, Dirk Smits and Kay Smits, approached plaintiffs-appellees, Richard Prescott and Nancy Prescott, and inquired about leasing the Prescotts' farm located in Panton, Vermont. The parties negotiated the lease agreement over a two-month period. Defendants, experienced dairy farmers, personally inspected and examined the property during the course of these negotiations. The parties eventually agreed that defendants would lease the farm for three years beginning on May 1, 1982. An annual rental of $14,400.00 was agreed upon, the rent to be paid in equal monthly installments.

Defendants moved themselves and their herd onto the farm in March of 1982, with plaintiffs' approval. During the summer months they made rental payments to plaintiffs totaling $2,600.00. The plaintiffs drew up a lease incorporating the durational and rental terms cited above. The defendants, however, objected to certain other provisions of the lease agreement and refused to sign the instrument.

Defendants experienced problems from the outset of their tenancy. In April and May, eight of their cows died; six other cows suffered from various forms of mastitis. When defendants complained that their water supply was inadequate, plaintiffs installed a new pump at their own expense.

Defendants vacated the farm in October of 1982, without giving plaintiffs prior notice. In November defendants harvested corn which they had planted on the farm and removed it from the property.

Plaintiffs began reasonable efforts to re-lease the property toward the end of 1982. In March of 1983, the farmhouse was re-

leased for a monthly rental of $250.00. In May the farmland was re-leased for an annual rental of $4,500.00

Plaintiffs brought this action for nonpayment of rent. Defendants counterclaimed for damages suffered because of plantiffs' breach of their agreement to furnish defendants a farm in condition reasonably fit for the operation of a dairy farm.

■ By statute, to sustain an action at law an agreement to lease property for more than one year must be signed by the party to be charged therewith, or by his agent. 12 V.S.A. § 181(5). All "[e]states or interests in lands, created or conveyed without an instrument in writing shall have the effect of estates at will only." 27 V.S.A. § 302; see *Barlow* v. *Wainwright*, 22 Vt. 88, 91-92 (1849) (quoting former statute).

It is not disputed that an estate at will can be converted to a year-to-year tenancy. See, e.g., *Rich* v. *Bolton*, 46 Vt. 84, 87 (1873); *Silsby* v. *Allen*, 43 Vt. 172, 177 (1870); *Barlow, supra*, 22 Vt. at 92. Defendants, citing *Barlow, supra*, and *Rich, supra*, however, maintain that such a conversion can only be effected where there is continued possession over a period of years and payment of annual rent. We disagree.

■ Entry and occupation under an invalid oral lease creates a tenancy which is either from year to year, from month to month, or strictly at will, depending on the circumstances of the case. See 3 G. Thompson, Commentaries on the Modern Law of Real Property § 1021, at 42 (1980).

Perhaps the leading indicator of a year-to-year tenancy where the nature and duration of the tenancy is left undetermined by the lease agreement is an agreement to pay annual rent. See *Bolton, supra*, 46 Vt. at 87 (citations omitted). At trial defendants conceded they agreed to an annual rental term. Moreover, they went into possession and paid rent pursuant to that agreement. See 3 G. Thompson, *supra*, § 1100, at 344 (where a tenant enters into possession and pays some aliquot part of an annual rental, general doctrine of tenancy from year-to-year is applicable).

The fact that the defendants lived on the farm for less than a year is not determinative. In *Silsby, supra*, 43 Vt. at 177, this Court expressly noted that "[i]t is not the length of time that the tenant holds and pays annual rent that works the conversion. It is wrought by the fact that the tenant enters and holds under a stipulation to pay annual rent, and pays accordingly." Nor is the form of the payments made controlling. Although the defendants

here made payments which would be consistent with either a month-to-month or a year-to-year tenancy, the character of the lease agreement itself convinces us that the trial court's conclusion that a year-to-year tenancy was created should be affirmed.

In the normal residential rental transaction, parties typically agree to month-to-month tenancies. Farmers, on the other hand, operate on a yearly calendar; they use the property for six months to pasture their animals and grow their feed which then lasts them through the winter while the land is unproductive and virtually useless. Consequently, the year-to-year tenancy doctrine is more readily applicable in an agricultural lease setting; it is invoked for the protection of landlords as well as tenants. See, e.g., *Rhodes* v. *Sigler*, 27 Ill. App. 3d 1, 3-4, 325 N.E.2d 381, 383 (1975) (year-to-year tenancy arises where one is given possession under a parol agreement for indefinite term with annual reservations of rent—tenant farmers entitled to statutory notice of termination); see also *Roseneau Foods, Inc.* v. *Coleman*, 140 Mont. 572, 577, 374 P.2d 87, 90 (1962) (fact that the business conducted by the lessee fluctuated on a yearly basis held sufficient to overcome fact that rent was paid on a monthly basis and to create a year-to-year tenancy).

In sum, we hold that the agreement to pay annual rent, the payments made pursuant to that agreement and the character of the lease agreement converted the estate to a year-to-year tenancy, entitling both parties to six-month notice prior to termination. See *Silsby, supra,* 43 Vt. at 177 (when estate becomes converted to a year-to-year tenancy, six months' notice is necessary to terminate tenancy). Absent such notice, the defendants remained liable for the annual rent.

Defendants contend the six-month notice rule is inapplicable here because plaintiffs instituted an action for possession, thereby manifesting their intention to claim the forfeiture and terminate the lease, and defendants vacated the premises. See *Hinsman* v. *Marble Savings Bank*, 104 Vt. 40, 42-43, 156 A. 874, 875 (1931) (unequivocal act of bringing suit for possession amounts to re-entry and works a forfeiture; having once made election to claim forfeiture lessor cannot then recover under the lease). Although defendants pleaded termination by institution of a civil action for possession, they did not introduce any evidence on this point nor did they bring it to the trial court's attention by way of a request to find. Consequently, they failed to preserve

their contention for appeal. See *Lamphere* v. *Beede*, 141 Vt. 126, 129, 446 A.2d 340, 341 (1982) (contentions not raised or fairly presented to the trial court are not preserved for appeal); *Fyles* v. *Schmidt*, 141 Vt. 419, 422-23, 449 A.2d 962, 965 (1982) (issues not ruled on by the trial court cannot be raised for the first time on appeal).

Defendants' final claim is that the trial court erred in finding for the plaintiffs on defendants' counterclaim for damages resulting from plaintiffs' alleged breach of the lease agreement.

Before we turn to the merits of defendants' claim, we set forth the applicable standard of review:

> [F]indings of fact will not be set aside unless, taking the evidence in the light most favorable to the prevailing party and excluding the effects of modifying evidence, they are clearly erroneous. Further, where the evidence is in conflict, such findings will stand even if the evidence predominates against them; only where the contrary proof is so overwhelming that there is no reasonable basis upon which findings can stand will they be set aside.

*Cliche* v. *Cliche*, 143 Vt. 301, 306, 466 A.2d 314, 316 (1983) (citations omitted).

The trial court in this case found that, after moving onto plaintiffs' farm, defendants' herd suffered a decrease in milk production. Defendants contend that the decrease was attributable to an inadequate water supply. We note, however, that eight of defendants' cows died and six other cows contracted various forms of mastitis. The court found that the potential causes of these misfortunes were many and that there was no basis in the evidence to determine the actual cause of the deaths, diseases or decrease in production. Our review of the record reveals credible evidence that fairly and reasonably supports this finding in all respects. Since the cause of the damages suffered was not established, the defendants' counterclaim must fail.

*Affirmed.*