VERMONT SUPERIOR COURT
Franklin Unit
17 Church Street
St. Albans VT  05478
802-524-7993
www.vermontjudiciary.org



CIVIL DIVISION
Case Nos. 22-CV-00547
& 22-CV-4537

---

Eric Nye, II et al v. Boissonneault Family Farm, Inc.

---

# DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Eric Nye seeks to evict Defendant Boissoneault Family Farm, Inc. ("BFFI") from farm premises, at least some of which BFFI has occupied since 2007. Initially, BFFI occupied the property pursuant to a written lease. The parties now dispute the extent to which that lease now governs. Mr. Nye contends that, pursuant to the lease's holdover provision, it became a month-to-month lease, terminable on thirty days' notice, at the end of the initial one-year term. In response, BFFI contends that by mutual agreement of the parties, the lease became an annual lease, terminable only on six months' notice. Mr. Nye has moved for partial summary judgment on this question. The court denies the motion.

The parties' papers establish the following narrative of undisputed facts. In 2007, the parties executed a written lease. The lease was for a term of "one year, commencing on Oct 23, 2007, and ending on Oct 23 2008 renewable yearly." Notably, "renewable yearly" is a handwritten addition to what appears to be a stock form of lease. It is perhaps unsurprising, then, that the lease nowhere specifies how renewal is to occur. Further on in the document, however, it provides,

> 15.6 **Holding Over.**  If Tenant remains in possession of the Premises or any part thereof after the expiration of the term hereof without the express written consent of Landlord, such occupancy shall be a tenancy from month to month at a rental in amount of the last monthly rental, and upon all the terms hereof applicable to a month-to-month tenancy, with either party having the right to terminate within thirty (30) days prior written notice.

BFFI has remained in possession of the leased premises since 2007. During that time, the parties have not executed any written modifications or extensions of the lease. Rather, all of their dealings have been oral.

On November 11, 2022, Mr. Nye sent a notice of termination to BFFI. The notice purported to terminate BFFI's tenancy "effective thirty days from receipt of this letter or December 16, 2022

whichever occurs first." Mr. Nye's wife hand-delivered the notice to BFFI's President on November 12, 2022. On November 14, 2022, BFFI's President acknowledged receipt of the copy of the notice that had been sent by certified mail. BFFI remains in possession of the premises to this day. Mr. Nye argues that on these facts, his notice of termination was effective, and so he is entitled to a judgment for possession as a matter of law.

While BFFI does not dispute the facts above, it argues that there are other material facts that preclude summary judgment. Specifically, it asserts that from 2008, it and Mr. Nye operated on a handshake basis. It asserts that by oral agreement, the parties modified the lease arrangement to be an annual lease, with rent paid annually in October, just before taxes on the property were due. It notes also that beginning in the early years of the relationship, the parties orally increased the scope of the lease to include additional acreage, which acreage, and the amount payable, varied from year to year. Finally, it notes that as a result of these and other conversations, it made substantial capital improvements, which it would not have made absent agreement to a longer lease term than month-to-month.

Mr. Nye has not attempted to disprove these facts; instead, he argues that they are not material. Of course, it is his initial burden to show an absence of dispute of material fact. *E.g.*, *Couture v. Trainer*, 2017 VT 73, ¶ 9, 205 Vt. 319 (citing V.R.C.P. 56(a)). Thus, if he is wrong, and BFFI's suggested facts are material, Mr. Nye's motion fails.[1]

At the heart of this dispute is the question of whether, at the end of the original lease term, BFFI's tenancy became month-to-month or remained year-to-year. This is a critical question; the answer dictates how much notice was required to terminate BFFI's tenancy. The written lease is far from unambiguous on this point. It makes no provision for termination for no cause, except in the case of a holdover tenancy; in such a case, only thirty days' notice is required. It also contemplates termination in the event of a sale of the property; in that event, six months' notice is required. And most importantly, while it provides for renewal, how a renewal occurs, and whether and how that is different from a "holding over," are left completely to the imagination of the reader. Moreover, the circumstances surrounding the making of the agreement cast doubt on the interpretation of the lease. *See Kipp v. Est. of Chips*, 169 Vt. 102, 107 (1999) (court may consider limited extrinsic circumstances surrounding the making of agreement to determine ambiguity). Thus, reasonable people could differ as

---

[1] The court notes that even had Mr. Nye met his initial burden on this issue, BFFI has alluded to competent evidence that, viewed in the light most favorable to BFFI, is sufficient to meet any burden it then might bear. *See Carr v. Peerless Ins. Co.*, 168 Vt. 465, 476 (1998); *see also Gates v. Mack Molding Co.*, 2022 VT 24, ¶ 13, 216 Vt. 379 ("In determining the existence of genuine issues of material fact, courts must accept as true the allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material.") (quotation omitted).

Vermont Superior Court
Filed 01/30/24
Franklin Unit

to the interpretation of the lease on this important question. In short, the lease is ambiguous on the point that is central to this case.

The determination, as a matter of law, that the lease is ambiguous does not end the inquiry; it means only that interpretation of the lease is a question of fact. *See, e.g., Constr. Drilling, Inc. v. Eng'rs Constr., Inc.*, 2020 VT 38, ¶ 12, 212 Vt. 323. Thus, it remains open to Mr. Nye to show that on the undisputed facts, no reasonable person could conclude that the lease arrangement was anything other than month-to-month after the end of the original one-year lease term. He has made no effort in this regard, however. Thus, he has failed in his initial burden on this motion. *See Couture v. Trainer*, 2017 VT 73, ¶ 9, 205 Vt. 319 (quoting V.R.C.P. 56(a)) (A party moving for summary judgment has the burden of showing "that there is no genuine dispute as to any material fact.").

This failure relieves BFFI of any obligation to come forward with any evidence at this time. *See Gross v. Turner*, 2018 VT 80, ¶ 8, 208 Vt. 112 ("Once a claim is challenged by a properly supported motion for summary judgment, the nonmoving party . . . must come forward with admissible evidence to raise a dispute regarding the facts."). Nevertheless, BFFI has sufficiently shown that there is at least a genuine dispute on this issue. As noted above, the circumstances surrounding the making of the agreement cast doubt on the parties' intentions concerning the manner of renewal, the lease term in such event, and the amount of notice required. Moreover, their subsequent course of performance at suggests that both parties understood that the lease arrangement remained year-to-year after the expiration of the original term. *See B & C Mgmt. Vt., Inc. v. John*, 2015 VT 61, ¶ 13, 199 Vt. 202 (court may consider evidence of parties' performance under ambiguous contract as extrinsic evidence of intent).

This, of course, is a critical question. Our Court has held that "the agreement to pay annual rent, the payments made pursuant to that agreement and the character of the lease agreement converted the estate to a year-to-year tenancy, entitling both parties to six month notice prior to termination." *Prescott v. Smits*, 146 Vt. 430, 433 (1985). Significantly, in that case, the Court observed that "the year-to-year tenancy doctrine is more readily applicable in an agricultural lease setting." *Id.* Here, even though not properly challenged by Mr. Nye's papers to do so, BFFI has come forward with evidence sufficient to support findings that would bring this case squarely within those teachings. Clearly, Mr. Nye did not provide six months' notice; nor did the notice that he did give look to the end of the lease year. *See Maniatty v. Carroll*, 114 Vt. 168, 169 (1945) ("In order to terminate a tenancy from year to year, so as to entitle the lessor to possession, . . . six months' notice of the termination of the tenancy, and looking to the end of the year, is necessary."). Thus, there is at the very least a genuine dispute as

to whether the notice he did give was sufficient to support his claim for eviction. *See Vermont Small Business Devel. Corp. v. Fifth Son Corp.*, 2013 VT 7, ¶ 15, 193 Vt. 85 (requirement of "punctilious compliance" with notice provisions applies in nonresidential context).

## ORDER

The court denies the motion. While the facts on which Plaintiff relies are undisputed, they are not all the facts material to the determination of this question. The lease is ambiguous; whether and how it may be renewed, as distinguished from a "holding over," does not appear on the face of the document. The parties' course of dealing injects greater uncertainty, suggesting either that the parties intended that what occurred here was a renewal rather than a "holding over" or that the parties may have agreed orally to modify the lease. As a result, there is at least a genuine dispute as to whether, after the expiration of the original lease term, the lease was year-to-year or month-to-month; if the former, then Plaintiff's notice of termination was defective, and will not support eviction, while if the latter, the notice was effective, and Plaintiff is entitled a judgment for possession. These are questions that must be resolved by the jury. The clerk will schedule a pretrial conference.

Electronically signed pursuant to V.R.E.F. 9(d): 1/30/2024 3:38 PM

_____
Samuel Hoar, Jr.
Superior Court Judge