Amsden v. Blaisdell.

ROLLIN AMSDEN v. FLOYD & BLAISDELL.

*Pleading. Sale. Landlord and Tenant.* R. L. s. 1932.

1. A statement in exceptions that a certain fact *appeared* is equivalent to stating that there was no controversy in regard to it.

2. The defendants in May, 1885, commenced under a parol lease to occupy the plaintiff's premises at an agreed rent of $45 per month, and in March, 1886, he notified them that if they continued after that month they must pay $60 per month; *Held,* that the tenancy was one at will under the statute,—R. L. s. 1932,—and that the said notice terminated it; and that the plaintiff was entitled to recover $60 per month after March, 1886, on an implied promise.

3. A tenant at will, after notice to quit, has a reasonable time to vacate the premises and procure other accommodations, depending upon the circumstances.

ASSUMPSIT with count for use and occupation. Trial by jury, May Term, 1887, Walker, J., presiding. Verdict and judgment for the plaintiff to recover $1090.43.

The plaintiff's evidence tended to show, and was uncontradicted, that he leased the premises to the defendants for the storage of a large quantity of machinery. The attorney of the defendants admitted that they should pay $45 per month to the commencement of the suit. The only question in dispute submitted to the jury, was whether after March 31, 1886, the rent should be increased to $60 per month.

There was no evidence before the jury tending to show that the defendants ever agreed to pay said rent of $60 per month unless the same is implied by law by their continuing in possession after receiving said notice.

It appeared that the defendants and one Harlow as co-trustees of Jones, Lamson & Co., and their creditors, jointly occupied the premises and that R. L. Jones, acting in behalf of the trustees, made the trade shortly before May 13, 1885. The plaintiff testified that Jones came to see him on what

Amsden *v.* ·Blaisdell.

terms the machinery could remain " there for a time, not to exceed six months." * * * " I told him after a little talk that it could remain there on the same terms that it had remained,—the same terms that Jones, Lamson & Co. had paid me from December 10, 1884." The court charged the jury in part: "Under that arrangement these defendants were to pay $45 per month, the understanding being that the probable occupancy would not exceed six months, and they went into possession under that contract. They paid no rent, and they have occupied the premises from that time down to the present. Prior to the 1st of April, 1886, Mr. Amsden gave notice to the defendants that, if they remained and occupied the premises after the 1st of April, 1886, they must pay him $60 per month. These notices are in evidence some of them, and you have heard the proof.

"I charge you in accordance with the request of the plaintiff that these defendants remaining in the possession and occupancy of that property after the 1st of April, 1886, under this notice that they should pay $60 per month if they remained after the first of April, the law implies a promise on their part to pay $60 from the 1st of April down to the time plaintiff seeks to recover, 13th November, 1886."

*Wm. Batchelder*, for the defendant.

The law does not imply a promise to pay increased rent from the bare fact that the defendants remained in possession after notice of increase of rent after a certain time.

The fact that they continued in possession, by itself proves nothing positively. It was a circumstance proper to be submitted to the jury to be considered by them in connection with all the other evidence in the case.

The fact of assent or making no objection was just as essential to be proved by the plaintiff as the fact of continuing in possession. The court will not presume that defendants assented or made no objection, especially when it finds them objecting to and resisting the claim.

Amsden *v.* Blaisdell.

The court should have submitted the case to the jury to find the facts from all the evidence before them. *Whitney* v. *Sullivan*, 7 Mass. 107.

The notice of increase of rent was invalid. It was an attempt to raise the rent during the term. The original lease was for six months. Defendants held over with consent of plaintiff, and hence were holding for another term of six months, which would not expire until May 13th, 1887. A tenant holding over after the expiration of his lease, even though but for a short time by permission, is in on the conditions and for the term of the original lease.

A tenancy "from year to year" will be inferred by a holding over after the expiration of the term by permission of the landlord. 4 Wait Act. & Def. 203, citing *Jackson* v. *Salmon*, 4 Wend. 327; *Right* v. *Darby*, 1 Term, 162; *Kelley* v. *Patterson*, 43 L. J. C. P. 320; *Conway* v. *Starkweather*, 1 Denio, 113.

A month's notice was necessary. 32 Vt. 39; 43 Vt. 172; 1 Wash. Real Prop. 291, 383, 387.

*Davis & Enright*, for the plaintiff.

There was no error in the charge of the court, that the law implied a promise to pay $60 per month by the defendants after April 1, 1886, in view of the notice given them by the plaintiff. The written notices terminated the old lease at $45 per month, and it was the duty of the defendants to vacate unless they impliedly promised to pay the increased rent. It would be a fraud upon the plaintiff to hold otherwise, when the defendants gave no dissent, but stood silently by and saw him making repairs made necessary by their continued occupancy. In numerous cases the law implies a promise from the circumstances. *Paddock* v. *Kittridge*, 31 Vt. 378, 384; *Ives* v. *Hulet*, 12 Vt. 314, 327. There is "a sort of moral estoppel," applied in such cases, says BENNETT, J., in *Ives* v. *Hulet*, *supra*. See 1 Par. Cont. 476; *Gilson* v. *Bingham*, 43 Vt. 410, 415; *Kellogg* v. *Denslow*, 14 Conn. 411; *Boughton* v. *Standish*,

48 Vt. 594; *Esty & Dutton* v. *Read*, 29 Vt. 278; *Callender Co.* v. *Marshall*, 57 Vt. 235.

But this very question has been decided by the courts; and it is held that if a tenant holds over after the expiration of the lease, when the landlord had notified him that if he retained possession he must pay a higher rent, he is deemed to have assented to pay the increased rent. *Hunt* v. *Bailey*, 39 Mo. 257; *Binkley* v. *Walcott*, 10 Heisk. 22; *Grigsby* v. *Fullerton*, 57 Mo. 309; *Mack* v. *Bent*, 5 Hun, 28; *Despan* v. *Walbridge*, 15 N. Y. 374; *Roberts* v. *Hayward*, 3 C. & P. 432; 14 E. C. L. 381; Wood, Land. & L. s. 13.

The opinion of the court was delivered by

TAFT, J. Some questions of evidence are presented by the brief for the defendants. We do not consider any question of that kind open, as they relate to the subject of notices to the defendants of an increase of rent, although they are stated in the exceptions, for they are accompanied by the statement that "*it appeared* * * * that in March, 1886, plaintiff notified the defendants, and said Harlow, that if they occupied said premises after April 1, 1886, they must pay therefor a monthly rent of sixty dollars." Although these evidentiary questions are stated in the exceptions, it is presumed that the result of the whole evidence left the case as stated in the clause setting forth what appeared upon trial. "A statement in exceptions that a certain fact appeared, is equivalent to stating that there was no controversy in regard to such fact." *Noyes* v. *Rockwood*, 56 Vt. 647.

The remaining question is upon the charge of the court.

This action is assumpsit for the occupation of premises, used for storing a quantity of machinery. It was conceded that the relation of landlord and tenant existed. The lease was by parol, beginning on the 13th of May, 1885, at an agreed rent of forty-five dollars per month, payable monthly. The plaintiff notified the defendants in March, 1886, that, if they occupied the premises after that month, they must pay sixty

Amsden *v.* Blaisdell.

dollars per month rent. They continued in possession. The court ruled, as matter of law, that the plaintiff was entitled to recover at that rate after March, 1886. The tenancy, under section 1932, R. S., was one at will. It had not ripened into one from year to year; for the premises at the time of the notice had not been occupied for a year; and it is clear, that in order to convert a tenancy at will into one from year to year, an occupation for the second year must at least be entered upon. We have no occasion to say aught in relation to the termination of a tenancy from year to year. Tenancies at will can be terminated by any act or declaration inconsistent with the continued voluntary relation of landlord and tenant,—as notice to quit; threat of legal means to recover possession; anything that amounts to a demand of posssession; the bringing of an action to recover possession, which fails, and we think a notice to the tenant, that, if he continues in possession thereafter, he must pay an increased rent, terminates the tenancy. It is in effect saying to the lessee, "You cannot continue in possession of the premises under our present arrangement; you must cease occupying under it." We have no statute provision as to the termination of tenancies at will, and are therefore governed by the common law. When tenancies at will are terminated by notice, the real question is not how long a notice shall be given, or is requisite to terminate it. Notice to quit the possession, or anything equivalent to it, terminates it; and the question necessarily remaining is how long a time has the tenant, to vacate the premises. Under a notice to quit, or, upon the determination of a tenanacy at will, in any other manner, a tenant has the right to a reasonable time to vacate the premises, depending upon the circumstances of the case. Under a lease of agricultural lands, he may be entitled to emblements, and can remain long enough after the lease determines, to gather the crops that he has sown, which may be for the greater part of the year. In a lease of buildings, the tenant, when the lease ends, may have nothing in them, and so would need no time to vacate them; in

Amsden *v.* Blaisdell.

a case like the one at bar where the premises are used for storing heavy machinery, the lessee should have reasonable time to procure other accommodations, and remove his property. A case might arise where it would be necessary to erect buildings; store houses might be plenty in the vicinity, or, there might be none. No rule can be laid down to apply to all cases. See *Ellis* v. *Paige*, 1 Pick. 43, the opinion in which by PUTNAM, J., is given in note to *Coffin* v. *Lunt*, 2 Pick. 70; *Sheldon* v. *Davey*, 42 Vt. 637; *Chamberlain* v. *Donahue*, 45 Vt. 50; *Rich* v. *Bolton*, 46 Vt. 84. We think the lease was determined by the notice in March, 1886. It was then the duty of the defendants to vacate the premises within a reasonable time; but no question arises upon that subject, as they chose to remain as tenants, and so remaining, the law implies a promise on their part to pay the rent to which the plaintiff notified them they must pay, in case they did remain. The action of the court was correct, and its judgment is affirmed.

VEAZEY, J., did not sit, being absent.